UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| People for the Ethical Treatment of Animals, Inc.,<br>   1536 16th St. NW<br>   Washington, DC 20036,<br>     Plaintiff,<br>               v.<br><br>United States Fish and Wildlife Service and Sally Jewell, in her official capacity as Secretary of the Interior,<br>   1849 C St. NW<br>   Washington, DC 20240,<br><br>     Defendants. | Case No.: 1:13-cv-01209 |

## Complaint for Declaratory and Injunctive Relief

1.      Plaintiff, People for the Ethical Treatment of Animals ("PETA"), challenges the U.S. Fish and Wildlife Service's ("FWS") and Secretary of the Interior Sally Jewell's (the "Secretary") issuance of fifteen permits to the Hawthorn Corporation ("Hawthorn") to export and re-import endangered tigers—and Defendants' pattern and practice of unlawfully issuing ESA permits—as violative of the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"). Plaintiffs bring this suit for declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), from Defendants' failure to abide by their clear statutory and regulatory mandates to protect endangered animals. Defendants have abused their discretion and acted arbitrarily and capriciously, contrary to law, in excess of their statutory authority, and without observation of procedure required by law, all in violation of the APA. *Id.* § 706(2). In approving Hawthorn's requests for ESA permits (collectively, the "Application") and issuing these permits, which authorize Hawthorn to export the tigers for use in circus performances

throughout Canada—and in routinely issuing similar permits—Defendants violated the ESA and their own regulations in numerous ways, including by:

    a) Illegally waiving the requirement that the permitted activity directly enhances the survival of the species in the wild (the "Enhancement Requirement"), thereby issuing ESA permits to Hawthorn for the exclusive purpose of export for circus exhibitions. 16 U.S.C. §§ 1538(a)(1)(E) & 1539(a)(1)(A). Rather than requiring Hawthorn to demonstrate that the activity for which the company sought permits would directly enhance the survival of the tigers in the wild, Defendants accepted Hawthorn's vague promise of future contributions to a conservation program, essentially allowing Hawthorn to purchase permits (an arrangement hereafter referred to as "Pay-to-Play").  Defendants have a pattern and practice of impermissibly issuing ESA permits to applicants that, in the words of Defendants' unlawful policy, "contribute money to an organization that participates in *in situ* work in the range state for [the protected species]," rather than requiring applicants to demonstrate that the specific activity for which permits are sought enhances the species' survival in the wild.

    b) Illegally failing to disclose material information that Hawthorn submitted as part of its application and that Defendants relied upon in deciding to issue the permits—information that Defendants have a clear statutory mandate to disclose prior to making any permitting decision. *See* 16 U.S.C. § 1539(c). Defendants waited until *ten days **after** the permits were issued* to provide this information to Plaintiff, despite Plaintiff's repeated requests to Defendants for the information.

Complaint for Declaratory and Injunctive Relief

    c) Illegally issuing permits that operate to the disadvantage of an endangered species.

    d) Illegally failing to provide Plaintiff with ten days' notice of their decision to issue the fifteen permits, in contravention of FWS's own regulations and despite repeated requests by Plaintiff. In other instances where Plaintiff has requested the mandatory notice, Defendants have also failed to notify Plaintiff of their decision to issue permits.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 706(1) and 28 U.S.C. § 1331.

3. Venue is proper in this district under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e) because this is a civil action brought against an agency of the United States and an officer of the United States acting in her official capacity, and Defendants reside in this district.

## PARTIES

**A.  Plaintiff**

4. PETA is a Virginia non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code. PETA has an office at 1536 16th Street, N.W., Washington, D.C.  PETA is dedicated to preventing cruelty to, and the inhumane treatment of, animals, and undertakes these efforts through public education, cruelty investigations, research, animal rescue, legislation, special events, celebrity involvement, and protest campaigns. A central tenet of PETA's mission is to expose cruelty to animals used for circuses and other entertainment, educate the public about such cruelty, and encourage people to choose entertainment that does not involve or support abuse, neglect, or exploitation of animals.

Toward this end, PETA routinely gathers and disseminates information to its members and the public regarding animal protection issues, including the mistreatment of endangered species used in circuses. Defendants' failure to timely provide Plaintiff with material application information to which it is statutorily entitled has significantly hindered Plaintiff's ability to provide such information to the public. Tigers used for circuses are routinely subjected to physical abuse, inhumane confinement, and deprivation of species specific needs and instincts. For more than two decades, eliminating the use of tigers in circus performances has been a focus of PETA's charitable programs consistent with its mission. PETA focuses these efforts on U.S.-based circuses and circus exhibitors, and the vast majority of all of PETA's work takes place in the U.S.

5. PETA routinely participates in the ESA permitting process by submitting comments, including comments regarding applications for the export and import of endangered species used for entertainment. Defendants' failure to adhere to statutory mandates in issuing permits and unlawful refusal to provide Plaintiff with material application information that Defendants relied upon in issuing permits frustrates Plaintiff's ability to participate in the permitting process. Specifically, Defendants' failure to provide material information upon which permit issuance was based until *after* the permits were already issued deprived Plaintiff of the opportunity to meaningfully comment on the Application.

6. Defendants' conduct also directly frustrates PETA's mission to eliminate the cruelty to endangered species who are used for entertainment purposes, and has further aggrieved PETA by requiring PETA to divert and expend resources to counteract Hawthorn's unlawful conduct through various efforts, including but not limited to, monitoring and documenting

treatment of the tigers in Canada and exposing Hawthorn's illegal practices to the public and the media in Canada.

7. Defendants' unlawful issuance of permits to Hawthorn and Defendants' pattern and practice of unlawfully issuing permits based on a Pay-to-Play scheme where applicants do not meet the Enhancement Requirement also frustrates PETA's mission and forces it to divert resources to draft comments on permit applications, only to then have them be unlawfully issued.

8. Defendants' unlawful failure to provide Plaintiff with ten days' notice of permit issuance precluded Plaintiff from seeking a temporary order restraining the unlawful export of the tigers into Canada, which happened on May 10, 2013—six days *before* Plaintiff was apprised of Defendants' permit issuances, and also impaired Plaintiff's ability to keep its members and the public informed. Defendants' pattern and practice of failing to provide ten days' notice likewise impairs and is likely to continue to impair Plaintiff's ability to seek action ensuring compliance with the law and to keep its members and the public informed.

**B. Defendants**

9. Defendant FWS is a federal agency within the Department of the Interior (the "DOI"). The DOI is charged with implementing the ESA with respect to land animals.

10. Defendant Sally Jewell is sued in her official capacity as Secretary of the Interior. The Secretary is the federal official responsible for protecting threatened and endangered land animal species under the ESA.

## STATUTORY AND REGULATORY FRAMEWORK

11. Section 9 of the ESA, 16 U.S.C. § 1538, strictly prohibits virtually all dealings with endangered species, including importing or exporting endangered species. *Id.* § 1538(a)(1)(A).

12. Section 10 of the ESA, 16 U.S.C. § 1539, allows for exceptions to Section 9's prohibitions in strictly limited circumstances. Section 10 reflects a policy of "institutionalized caution" and was carefully drafted to substantially limit the number of exemptions that may be granted. Accordingly, Section 10 allows Defendants to issue permits for export and import *only* "for scientific purposes or to enhance the propagation or survival of the affected species." *Id*. § 1539(a)(1)(a) (the "Enhancement Requirement"). As the FWS has recognized, in order to meet the Enhancement Requirement, applicants must be able to demonstrate how their proposed activities directly relate to the survival of the species in the wild.

13. In furtherance of Congress' intent "to limit substantially the number of exemptions that may be granted under the Act," Section 10 of the ESA only permits FWS to issue permits that, if granted and exercised, "will not operate to the disadvantage" of the endangered species. *Id*. § 1539(d); *see* H. Rep. No. 412 (1973), 93d Cong., 1st Sess. 17, *reprinted in* "A Legislative History of the Endangered Species Act of 1973," 97th Cong., 2nd Sess. The ESA further states that the Secretary may grant Section 10 permits *"only if he finds and publishes* his finding in the Federal Register" that the foregoing requirement has been met, that "such exceptions were applied for in good faith," and that issuance "will be consistent with the purposes and policy [of the ESA]." 16 U.S.C. § 1539(d) (emphasis added).

14. Section 10(c) of the ESA further requires that Defendant "shall publish notice in the Federal Register of each application for an exemption or permit which is made under [section 10]," and requires that "[e]ach notice shall invite the submission from interested persons, within thirty days after the date of the notice, of written data, views or arguments with respect to the application . . . ." *Id*. § 1539(c). Section 10(c) also mandates that "[i]nformation received by the

Secretary as part of any application [for an exemption or permit] be available to the public as a matter of public record at every stage of the proceeding." *Id*.

15. Defendants may grant exceptions under section 10(a) "only if [they] find[] and publish[] . . . in the Federal Register that (1) such exceptions were applied for in good faith, (2) if granted and exercised will not operate to the disadvantage of such endangered species, and (3) will be consistent with the purposes and policy" of the Act. 16 U.S.C. § 1539(d).

16. The FWS has issued regulations implementing section 10 of the ESA. The regulations for obtaining permits for enhancement of the propagation or survival of the species are included at 50 C.F.R. § 17.22 and 50 C.F.R. §§ 13.11-13.50.

17. Defendants are required, "at least ten days prior to issuance of the permit," to "make reasonable efforts to contact by telephone or any other expedient means" any party who has requested advanced notification of permit issuance during the comment period "and inform that party of the issuance of the permit." 50 C.F.R. § 17.22(e)(1), (e)(2). Deviation from the ten-day notice requirement is only permissible "if delay in issuance of the permit would: (i) Harm the specimen or population involved; or (ii) unduly hinder the actions authorized under the permit." *Id.* § 17.22(e)(2).  If Defendants "reduce[] or dispense[] with the notice period," Defendants are required to provide a written explanation for such deviation. *Id.* § 17.22(e)(3).

18. FWS's regulations provide that "[t]he duration of permits . . . shall be designated on the face of the permit," *id.* § 17.22(a)(4), and allow the agency to "amend any permit for just cause at any time during its term." *Id.* § 13.23(b). Moreover, FWS' regulations provide that the agency may suspend a permit "at any time" if the permittee is not in compliance with conditions of the permit or with applicable laws or regulations, *id.* § 13.27(a), and may revoke a permit for a

variety of reasons, including the permittee's willful violation of applicable laws and regulations, *id.* § 13.28(a).

19. Any person who knowingly violates the ESA, FWS regulations, or "any provision of any permit or certificate" issued pursuant to the ESA may be subject to civil penalties, criminal prosecution, criminal fines, and/or imprisonment. 16 U.S.C. § 1540(a) & (b). Upon reasonable belief of a violation, upon importation or exportation, any person authorized by the Secretary may make arrests with or without a warrant and may seize wildlife with or without a warrant. *Id.* § 1540(e)(3).

20. All wildlife "transported, delivered, received, carried, shipped, exported or imported contrary to the provisions of [the ESA], any regulation made pursuant thereto, or any permit or certificate issued hereunder shall be subject to forfeiture to the United States." *Id.* § 1540(e)(4)(A).

21. The APA provides, in relevant part, that a "reviewing court *shall . . . hold unlawful and set aside agency action*, findings, and conclusions found to be": "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D) (emphasis added).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

**A. Facts Giving Rise to Count One: Defendants Unlawfully Accepted Hawthorn's "Pay-to-Play" Proposal Rather Than Requiring the Company to Meet the Enhancement Requirement**

22. On August 17, 2011, Defendants published notice in the Federal Register (76 Fed. Reg. 51051) that the Hawthorn Corporation had submitted applications on Form 3-200-30 for permits to export and re-import seven endangered tigers (collectively, the Application):

a) Sariska (PRT-058735);

b) Calcutta (PRT-058738);

c) Kushka (PRT-059163);

d) Segal (PRT-068350);

e) Pashawn (PRT-068353);

f) Sirit (PRT-154232); and

g) Shakma (PRT-154233).

23. On September 30, 2011, Plaintiff timely submitted comments to Defendants opposing issuance of the ESA permits to Hawthorn for numerous reasons, including Hawthorn's failure to provide even the ruse of fulfillment of the Enhancement Requirement. Indeed, Hawthorn provided *no information* whatsoever to suggest that the export of endangered tigers for exhibition in circuses has any relationship to "enhanc[ing] the propagation or survival" of the species in the wild.

24. Defendants advised Hawthorn on October 14, 2011, that "[t]o meet the requirements under the ESA you need to be able to demonstrate how your proposed activities directly relate to the survival of this species in the wild" and on October 19, 2011, that "it is imperative that you provide information that explains how you are involved in activities that benefit the survival of tigers in the wild." Letters from Anna Barry, Senior Biologist, Division of Management Authority, FWS to John F. Cuneo, Jr., President, Hawthorn Corp. (Oct. 14, 2011, and Oct. 19, 2011). On March 12, 2012, because of Hawthorn's failure to meet the Enhancement Requirement, Defendants again expressly advised Hawthorn that "you need to be able to demonstrate how your proposed activities **directly relate to the survival of this species in the wild.**" Letter from Anna Barry, Senior Biologist, Division of Management Authority, FWS to John F. Cuneo, Jr., President, Hawthorn Corp. (Mar. 12, 2012) (emphasis in original).

25. In response, Hawthorn, through its agent, circus lobbyist Steven Kendall, provided Defendants with correspondence dated December 31, 2012, that consisted of two pages

Complaint for Declaratory and Injunctive Relief

of information about circus lobbying, but included *no substantive information whatsoever* about tiger conservation in the wild. Kendall cursorily—in one sentence—mentioned the possibility that "Hawthorn Corporation has authorized [Kendall] to work with Project Tiger in India to benefit tigers in the wild." However, in the *nearly two years* since Hawthorn submitted the initial ESA Application, Hawthorn offered *no information whatsoever* regarding how its proposed activities (i.e., export of tigers for exhibition in circus performances) "directly relate to the survival of this species in the wild."

26. On February 11, 2013, Defendants published notice in the Federal Register (78 Fed. Reg. 9725-26) that they were "reopening the comment period to allow the public the opportunity to review additional information submitted" as part of six of the seven original permit requests submitted in 2011 (Hawthorn had since sold one of the tigers for whom it had initially sought a permit, Calcutta, PRT-058738, to another exhibitor), plus Hawthorn's new requests on Form 3-200-30 for new ESA permits to export and re-import ten additional tigers (bringing the Application to a total of sixteen permit requests):

   a) Sampson (PRT-058658);
   b) Neena (PRT-058659);
   c) Samira (PRT-058660);
   d) Tibor (PRT-058662);
   e) Jasmine (PRT-058665);
   f) Kiki (PRT-058666);
   g) Nakita (PRT-058667);
   h) Vijay (PRT-058668);
   i) Ravi (PRT-058736); and
   j) Sissy (PRT-182594).

27. On March 13, 2013, Plaintiff timely submitted comments to Defendants opposing issuance of all sixteen pending Hawthorn permit applications, noting numerous deficiencies in the Application, including Hawthorn's continued failure to meet the Enhancement Requirement. During another supplemental comment period, Plaintiff timely submitted additional comments on March 29, 2013, noting that Hawthorn had still failed to cure the defects in the Application, including its failure to meet the Enhancement Requirement.

28. On April 12, 2013, after Hawthorn had been unable to provide anything beyond vague references to the possibility of future contributions to an unspecified tiger conservation effort, Defendants advised Hawthorn that

> the information [Hawthorn] provided is insufficient for [FWS] to evaluate how [Hawthorn's] contribution would meet the enhancement requirement under the ESA . . . . At this time [we] have no other choice but to abandon the file . . . . Please be advised that [FWS] first requested this information from Mr. Hawthorn [sic] on October 14, 2011, and no other circus has been given this much latitude to provide such pertinent information.

E-mail from Anna Barry, Senior Biologist, Division of Management Authority, FWS, to Steven Kendall (Apr. 12, 2013).

29. FWS improperly guided Hawthorn through submission of a Pay-to-Play proposal, suggesting that, in lieu of fulfilling the Enhancement Requirement—which requires that the underlying activity for which the permits are sought directly relates to enhancement of the survival of the species in the wild—Hawthorn could "[c]ontribute money to an organization that participates in in-situ work in the range state for tigers." Letter from Anna Barry, Senior Biologist, Division of Management Authority, FWS, to John Cuneo, President, Hawthorn Corporation (Oct. 19, 2011).

30. Defendants underscored their willingness to accept a "Pay-to-Play" proposal by instructing Hawthorn that

> [FWS] recommend[s] that you undertake activities that will benefit survival of tigers in the wild. This could be achieved through the following:
>
> - Participation in situ [sic] conservation work in the species range states.
> - Participation in reintroduction programs or scientific research that is directly benefiting the wild population.
>
> When participating in these activities . . . you would . . . want to provide information on any long term commitment, financial and otherwise to assist the range state(s) in carrying out their conservation programs.

Letter from Anna Barry, Senior Biologist, Division of Management Authority, FWS, to John Cuneo, President, Hawthorn Corporation (Oct. 14, 2011).

31. On May 2, 2013, Plaintiff timely submitted additional comments during yet another supplemental comment period, noting that Hawthorn had still failed to demonstrate fulfillment of the Enhancement Requirement *more than eighteen months* after notice of Hawthorn's 2011 application had been published.

32. Despite Defendants' acknowledgement of the inadequacy Hawthorn's Application, Defendants issued fifteen of the sixteen requested ESA permits (according to Hawthorn, Neena, PRT-058659, had actually passed away the previous year—before the company applied for a permit to export her) to Hawthorn on May 9, 2013, noting that "[the application] is weak, but I say we accept it and let's get the permits out." Rather than holding Hawthorn to the clear requirement that the *activity for which the permits are being sought* "directly relate[s] to the survival of the species in the wild," Defendants unlawfully issued permits for Hawthorn to export endangered species for use in circus exhibitions in exchange for the vague possibility of an unspecified contribution to a tiger conservation program that had nothing to do with the circus exhibitions at some undisclosed future date.

33. In issuing the fifteen permits, which authorize Hawthorn to export the tigers for use in circus performances throughout Canada between May 10, 2013, and September 22, 2013,

Defendants advised Hawthorn that they would be "conditioning this permit to allow only this one-time cross-over into Canada and return, *with a longer term permit to come later* when [Hawthorn has] obtained the type of documentation we discussed . . . ." (emphasis added).

### B. Facts Giving Rise to Count Two: Defendants Denied Plaintiff Information to Which It Is Legally Entitled

34. As noted *supra*, Defendants made a *dramatic shift* in treatment of the Application between April 12, 2013—when Defendants announced they would be abandoning Hawthorn's file—and May 9, 2013, when Defendants unlawfully issued the ESA permits to Hawthorn.

35. Throughout the Application period and various associated comment periods, Plaintiff made repeated requests to Defendants for immediate access to any additional application materials provided by Hawthorn.

36. On May 20, 2013—over ten days *after they had already issued the permits*—Defendants provided Plaintiff with forty-one pages of additional application materials submitted by Hawthorn upon which Defendants relied in issuing the permits yet failed to make available to Plaintiff despite Plaintiff's repeated requests.

37. By failing to adhere to the legal requirement that Defendants make information available at every stage of the proceeding, by ignoring Plaintiff's repeated requests for additional Application materials, and by providing material information to Plaintiff only *after the permits were already issued*, Defendants unlawfully deprived Plaintiff of the right to meaningfully comment on the Application and frustrated Plaintiff's ability to educate its members and the public.

**C. Facts Giving Rise to Count Three: Defendants Unlawfully Issued Permits for Activities That Operate to the Disadvantage of an Endangered Species**

38. With its timely submitted comments, Plaintiff advised Defendants of their obligation to ensure that permits that "operate to the disadvantage" of an endangered species are not issued. Plaintiff also provided additional information to Defendants regarding Hawthorn's lengthy history of abuse and neglect of animals, including Hawthorn's routine failure to adhere to minimum standards of care prescribed by the federal Animal Welfare Act (AWA), 7 U.S.C. §§ 2131-2153. Indeed, the U.S. Department of Agriculture (USDA) has cited Hawthorn for more than one hundred AWA violations, such as forcing tigers to live in transport cages barely bigger than their bodies for months on end, failure to provide adequate veterinary care to tigers, and failure to provide adequate safety barriers between tigers and the viewing public. Hawthorn has accumulated $272,500 in civil penalties imposed by the USDA for AWA violations, has had its federal exhibitor's license suspended twice, and was the subject of the USDA's first-ever confiscation of an elephant. On the day that Defendants issued the fifteen ESA permits to Hawthorn, Hawthorn was the subject of an open investigation by the USDA into the company's ongoing failure to adhere to AWA standards.

39. Plaintiff provided extensive evidence, including an expert report by a leading expert in tiger conservation, that demonstrate the extent to which circus exhibitions and other exhibitions that showcase endangered animals engaged in unnatural behaviors in artificial environments operate to the detriment of wild populations of endangered species.

40. Despite the fact that the ESA requires case-by-case review of exceptions to the prohibited activities enumerated in Section 9, and that it prohibits issuance of permits for activities that operate to the disadvantage of an endangered species, Defendants issued permits for purposes that operate to the detriment of wild tiger conservation.

### D. Facts Giving Rise to Count Four: Defendants Issued Fifteen ESA Permits Without Giving Plaintiff Ten Days' Notice As Required by Law

41. On December 28, 2011, Plaintiff made a request pursuant to FWS' regulations for ten-days' advanced notice of Defendants' action on Hawthorn's initial 2011 application for ESA permits (PRT -058735, -058738, -059163, -068350, -068353, -154232, and -154233).

42. On March 5, 2012, FWS guaranteed that Plaintiff would receive ten days' advanced noticed of any action taken on the Hawthorn Application.

43. With the comments that Plaintiff timely submitted on March 13, 2013, Plaintiff included a request for ten days' advanced notification of action taken on all *sixteen* of the requests included in the pending Application: Hawthorn's request for six permits for which FWS re-opened the comment period, and Hawthorn's new request for ten permits for which FWS had opened the comment period for the first time.

44. With the additional comments that Plaintiff timely submitted on March 29, 2013, Plaintiff restated its request for ten days' advanced notification of action taken on the sixteen permit applications.

45. With the additional comments that Plaintiffs timely submitted on May 2, 2013, Plaintiff restated its request for ten days' advanced notification of action taken on the sixteen permit applications.

46. Between May 7, 2013, and May 15, 2013, Plaintiff made at least eleven attempts to reach FWS for an update on the status on its consideration of the Hawthorn permit applications.

47. On May 16, 2013, FWS contacted Plaintiff in writing and informed Plaintiffs that FWS had issued fifteen permits to Hawthorn seven days prior, on May 9, 2013, and had

intentionally not provided Plaintiff with ten days' notice of action taken on the permit applications.

48.     Defendants have a pattern and practice of failing to provide Plaintiff with ten days' notice of permit issuance as required by law. Plaintiff closely monitors and routinely comments on applications for ESA permits and Defendants have issued numerous permits to applicants without providing Plaintiff with requested ten days' notice.

## COUNT ONE

**Defendants Violated the ESA and APA by Issuing ESA Permits to an Applicant That Does Not Meet the Enhancement Requirement, and by Applying an Impermissible Pattern and Practice of Accepting "Pay-to-Play" Proposals**

49.     Plaintiffs reallege paragraphs 1 through 48 as if fully stated herein. Defendants illegally issued permits to Hawthorn to export fifteen endangered tigers for use in circus exhibitions without requiring the applicant to demonstrate that the activities for which the permits were sought directly enhance the survival of the species in the wild.

50.     By illegally issuing these permits without requiring Hawthorn to meet Enhancement Requirement and by accepting Hawthorn's "Pay-to-Play" proposal, Defendants violated Sections 9 and 10 of the ESA and, in doing so, abused their discretion and acted arbitrarily and capriciously, contrary to law, in excess of their statutory authority, and without observation of procedure required by law, all in violation of the APA, 5 U.S.C. § 706(2).

51.     Defendants' issuance of the ESA permits to Hawthorn is consistent with Defendants' impermissible pattern and practice of issuing Section 10 permits to other applicants that offer similar "Pay-to-Play" proposals rather than meeting the Enhancement Requirement.

52.     This violation of law has caused and continues to cause Plaintiff injuries in the manner specified in paragraphs 5 through 8and there exists a reasonable expectation that

Defendants' impermissible pattern and practice of accepting "Pay-to-Play" proposals will continue.

## COUNT TWO

**Defendants Violated the APA by Failing to Make Information Submitted as Part of Hawthorn's ESA Permit Applications Available**

53. Plaintiffs reallege paragraphs 1 through 52 as if fully stated herein. Defendants illegally issued permits to Hawthorn for fifteen endangered tigers without providing to Plaintiff information submitted by Hawthorn as part of its application that Plaintiff had repeatedly requested.

54. By illegally issuing these permits without providing this information to Plaintiff, Defendants violated Plaintiff's right under § 10(c) of the ESA to information, and, in doing so, abused their discretion and acted arbitrarily and capriciously, contrary to law, in excess of their statutory authority, and without observation of procedure required by law, all in violation of the APA, 5 U.S.C. § 706(2).

55. This violation of law has caused and continues to cause Plaintiff injuries in the manner specified in paragraphs 5 through 8.

## COUNT THREE

**Defendants Violated the ESA and the APA by Failing to Make and Publish Individualized Findings and by Issuing Permits for Activities That Operate to the Disadvantage of an Endangered Species**

56. Plaintiff realleges paragraphs 1 through 55 as if fully stated herein. Defendants unlawfully issued permits for activities that operate to the disadvantage of an endangered species.

57. By issuing permits for activities that operate to the disadvantage of an endangered species and by failing to make and publish individualized findings regarding the impact of permit

issuance on wild tiger populations, Defendants violated the ESA and FWS' own regulations, and in doing so, abused their discretion and acted arbitrarily and capriciously, contrary to law, in excess of their statutory authority, and observation of procedure required by law, all in violation of the APA, 5 U.S.C. § 706(2).

58.     This violation of law has caused and continues to cause Plaintiff injuries in the manner specified in paragraphs 5 through 8.

## COUNT FOUR

**Defendants Violated the ESA Regulations and the APA by Failing to Provide Plaintiff with Ten Days' Notice of Action Taken on the Permit Application**

59.     Plaintiffs reallege paragraphs 1 through 58 as if fully stated herein. Defendants unlawfully and intentionally failed to provide Plaintiff with ten days' notice of action taken on Hawthorn's permit applications despite Plaintiff's repeated requests and despite Defendants' assurance that Plaintiff would receive such notice.

60.     By intentionally refusing to provide Plaintiff with legally-required notice, Defendants willfully violated FWS's own regulations and, in doing so, abused their discretion and acted arbitrarily and capriciously, contrary to law, in excess of their statutory authority, and without observation of procedure required by law, all in violation of the APA, 5 U.S.C. § 706(2).

61.     Defendants' pattern and practice of failing to give proper notice has caused and will continue to cause Plaintiff injuries in the manner specified in paragraphs 5 through 8, and may reasonably be expected to continue, particularly given Defendants' pending consideration of extending the fifteen permits issued to Hawthorn.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that the Court issue an order:

1) Declaring that Defendants' issuance of the permits to Hawthorn violated the ESA and the APA;

2) Ordering Defendants to amend the fifteen permits issued to Hawthorn so that they expire within ten days of entry of an order from this Court, and specifying that any animals not re-imported to the United States pursuant to the terms of the amended permits will be subject to immediate confiscation and forfeiture upon re-entry, and that the permit holder will be subject to the imposition of civil penalties and the possibility of criminal prosecution;

3) Ordering Defendants to confiscate any of the fifteen tigers who are not returned to the United States in accordance with the amended terms of the permits, which expire within ten days of entry of a court order;

4) Enjoining Defendants from extending the duration of the fifteen ESA permits issued to Hawthorn on May 9, 2013;

5) Declaring unlawful Defendants' issuance of ESA permits to Hawthorn for activities that are not directly related to enhancing the survival of the species in the wild, irrespective of what *collateral* monetary, in kind, or other contribution Hawthorn pledges to donate to existing or future conservation initiatives that are wholly separate from the activity for which ESA permits are sought;

6) Declaring unlawful Defendants' pattern and practice of accepting Pay-to-Play proposals rather than requiring ESA permit applicants to demonstrate that the activities for which permits are sought directly relate to enhancement of the survival of the species in the wild;

7) Declaring unlawful Defendants' failure to give Plaintiff ten-days' notice of issuance of the permits;

8) Declaring unlawful Defendants' pattern and practice of failing to provide ten days' notice of permit issuance;

9) Enjoining Defendants from failing to provide ten-days notice of issuance of future permits;

10) Awarding Plaintiff its costs and reasonable attorneys' fees; and

11) Awarding Plaintiff any other relief that is just and proper.

Date:   August 6, 2013

                Respectfully submitted,

                /s/ Jeffrey S. Kerr_____
                Jeffrey S. Kerr (D.C. Bar No. 420323)
                Tel: 202-540-2171
                JeffK@petaf.org

                Delcianna Winders (D.C. Bar No. 488056)
                Tel: 202-309-4697
                DelciannaW@petaf.org

                PETA Foundation
                1536 16th Street NW
                Washington, DC 20036
                Fax: 202-540-2208

                Attorneys for Plaintiff