UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
PEOPLE FOR THE ETHICAL TREATMENT            )
OF ANIMALS, INC.,                           )
                                            )
          **Plaintiff.**                )
                                            )
v.                                          )   Civil. No. 13-1209 (RCL)
                                            )
UNITED STATES FISH AND WILDLIFE             )
SERVICE and S.M.R. JEWELL, in her official  )
capacity as Secreaty of the Interior        )
                                            )
          **Defendants.**               )
_____)

## MEMORANDUM OPINION

Before the Court is defendants' Motion to Dismiss [11] ("Mot."). After considering the motion, the memorandum in support, and the opposition and reply thereto, the Court will grant defendants' motion.

## I. BACKGROUND

People for the Ethical Treatment of Animals, Inc. ("PETA") filed its initial complaint in this matter on August 6, 2013. In it, they alleged that the United States Fish and Wildlife Service ("FWS") had violated the Endangered Species Act, 16 U.S.C. §§ 1531-1544, in its issuance of fifteen exportation and re-importation permits to the Hawthorn Corporation ("Hawthorn"). *See* Complaint at 1,[1] *People for Ethical Treatment of Animals, Inc. v. United States Fish and Wildlife Service et al.*, No. 13-1209, ECF No. 1 (hereinafter "Comp."). More specifically, PETA alleged that FWS had failed to give it the statutorily required ten days' notice prior to issuing the permits to Hawthorn, and that it had engaged in a "pattern and practice" of granting permits illegally.

---

[1] Page numbers for previously-filed documents in this matter refer to the page numbers assigned by the ECF system, not to the numbers assigned by the parties themselves.

Comp. at 16-18. The permits, which were issued on May 9, 2013, expired on October 31, 2013, and were not renewed; this was contrary to FWS's typical practice, as permits of this type are normally issued for three years. *See* Declaration of Timothy J. Van Norman in Support of Motion to Dismiss ("Van Norman Decl.") at 2-4. The permits, once they expired, were not reissued, and Hawthorn will have to apply for new permits if it wishes to export tigers again. *Id.*

On November 8, 2013, FWS filed the instant motion [11], which asked the Court to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). FWS asserted PETA's claims were moot, that PETA lacked standing to bring their claims, and that PETA's claims challenging the alleged "pattern and practice" were insufficient to state a claim under the Administrative Procedure Act ("APA").[2] That motion has now been fully briefed, and is ripe for decision.

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint for a lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). "Federal courts are courts of limited jurisdiction …. [i]t is to be presumed that a cause lies outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). "Under settled law, the District Court may in appropriate cases dispose of a motion to dismiss … under [Rule 12(b)(1)] on the complaint standing alone. But where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record … plus the court's resolution of disputed facts." *Herbert v. National Academy of Sciences*, 974 F.2d 192,

---

[2] FWS had previously filed for relief from the requirements of Local Rule 7(n), which normally requires agencies to file a certified list of the contents of the administrative record with their first dispositive motion when their actions are under judicial review. FWS's motion did not include that list, but this is immaterial, as the Court today has granted FWS's motion for relief from Local Rule 7(n)'s requirements.

197 (D.C. Cir. 1992). "[U]nder standards applicable to a motion to dismiss," the Court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Ord v. Dist. of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009), quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

III. ANALYSIS

A. Plaintiff's Claims Over The Specific Agency Action Are Moot

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." *United Broth. Of Carpenters and Joiners of America, AFL-CIO v. Operative Plasterers' & Cement Masons' International Associate of the United States & Canada, AFL-CIO*, 721 F.3d 678, 687 (D.C. Cir. 2013). "It is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition." 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533 (3d ed. 2014). "If events outrun the controversy such that the court can grant no meaningful relief; the case must be dismissed as moot." *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001).

Here, PETA's claims regarding FWS's individual agency action—the grant of the permits to Hawthorn—are clearly moot. PETA seeks to have this Court "[o]rder[] Defendants to amend the fifteen permits issued to Hawthorn so they expire within ten days of an entry of an order from this Court," to "[o]rder[] Defendants to confiscate any of the fifteen tigers who are not returned to the United States in accordance with the amended terms of the permits," and to "[e]njoin[] Defendants from extending the duration of the [permits]." Comp. at 19. This, of course, is impossible. The permits in question have already expired, so they Court cannot amend

3

them. All the tigers which were previously exported to Canada have since returned to the United States. And the FWS did not extend the permits, and there is no point in this Court issuing an injunction prohibiting the extension of permits which already have not been extended. Thus, any claims related to the specific granting of the permit are clearly moot.

The D.C. Circuit's decision in *National Football League Players Associate v. Pro Football, Inc.*, 56 F.3d 1525 (D.C. Cir. 1995), *vacated in other part on reh'g*, 79 F.3d 1215 (D.C. Cir. 1996), is instructive here. There, an arbitrator ordered the Washington Redskins to suspend several of their players who failed to pay union dues for the last game of the 1993-94 NFL season. *Id.* at 1528-29. However, the D.C. Circuit declared the case moot, as by the time the case was heard the 1993-94 season had already been completed, and thus no effective relief was available. *See generally Id.* Similarly, the permits at issued here have already expired, and the Court cannot order tigers already in the United States to return to the United States.

PETA's claims that it is suffering an ongoing injury are worthy of little consideration with regards to this specific agency action. Those claims appear to be based mostly on the now clearly unfounded fear that FWS would extend the permits at issue without allowing PETA an opportunity to comment. *See* Plaintiff's Opposition to Motion to Dismiss ("Opp.") at 16-18. Now, nine months after the original expiration of the permits, it is indubitable that FWS has not and will not extend the permits without allowing comment. A sworn declaration from the Chief of the Permits Branch of the FWS makes this clear as well. *See generally* Van Norman Decl. PETA's claims to an ongoing injury from the possibility that the permits will be improperly extended are now clearly moot as well.


## B. Mootness of a Claim Against A Specific Agency Action Also Moots Declaratory Relief Over That Action

That mootness of a claim against a specific agency action also moots claims for declaratory relief over those specific agency actions is well-attested in D.C. Circuit precedent, and it is notable that PETA does not even attempt to contest that principle's application here. *See generally* Opp. "[I]f a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for declaratory action that the specific actions was unlawful, unless the specific claim fits [within an exception to mootness doctrine]." *City of Houston, Tex. v. Department of Housing and Urban Development*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). Thus, the only ways for PETA's claims for declaratory relief to survive mootness are through an exception to the mootness doctrine or through an assertion that its claims challenge not just a specific agency action but rather a general pattern and practice.

## C. Exceptions to Mootness

### 1. Voluntary Cessation

While PETA does not articulate this argument fully, one potential argument that they seem to invoke is that FWS voluntarily ceased the offending conduct in an attempt to moot this case. Opp. at 16-18. This claim is clearly inapposite. As stated above, the challenged permits expired of their own terms on October 31, 2013; it is not as if FWS decreased their duration once this claim was filed. The voluntary cessation exception insures that a defendant is not "free to return to his old ways" after it takes unilateral action that moots a case. *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Here, there is no such risk, as the defendant did not have to modify anything after this complaint was filed to insure mootness became an issue.

PETA also seems to suggest that the decision not to extend the permits to Hawthorn amounts to a voluntary cessation. "The 'heavy burden of persua[ding]' the Court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), but FWS has met its burden. First, in the nine months since these permits have expired, FWS has not extended them. Second, as demonstrated in the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Rep.") at 9, FWS's own regulations do not allow permits that have already expired to be amended—only those that are still valid. *See* 50 C.F.R. § 13.23(b) ("[FWS] reserves the right to amend any permit for just cause at any time during its term"). Third, even if FWS were to violate its own regulations to amend already-expired permits, PETA would have ample opportunity to challenge the permits then: either because the permits were amended to cover a period long enough for PETA to obtain meaningful judicial review without having its claims be mooted, or because the challenged period would be so short that it would fall into the mootness exception dealt with immediately below.

**2. Capable of Repetition, Yet Evading Review**

The other exception to mootness doctrine that PETA relies upon in its opposition is the "capable of repetition, yet evading review" doctrine first articulated in *Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911). *Weinstein v. Bradford*, 423 U.S. 147 (1975) (*per curiam*) further refined that doctrine so that it only applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein*, 423 U.S. at 149. The *Weinstein* test requires that

the challenged action be *both* capable of repetition *and* evading review; a deficiency in one area renders the exception itself moot.

"[O]rders of less than two years' duration ordinarily evade review." *Burlington Northern R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996); *see also Pub. Utils. Comm'n v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001). Given that these permits only lasted five months, then, they would ordinarily evade review under D.C. Circuit precedent.[3] However, this Circuit also adds in an additional requirement that a given action must meet before it results in an application of this exception: that "the short duration is typical of the challenged action." *Del Monte Fresh Produce Co. v. U.S.*, 570 F.3d 316, 322 (D.C. Cir. 2009). *Del Monte* dealt with a challenge to the delay to the issuance of an export license; the longest identified delay in the issuance of an export license was 111 days, and the average time for an action on a license application was 74 days. *Id.* The Circuit found this typical, and applied the capable of repetition, yet evading review exception. *See generally id.*

Here, by contrast, typicality is not met. Hawthorn has been involved in 95 permitting applications with FWS over the past years, but only 21 of those actions have had durations of less than three years. Van Norman Decl. at 3. Removing the permits at issue in this case, only 6 of the remaining 80 actions had durations of less than three years. *Id.* This, of course, is not remotely typical, and one need only look at common usage to see it; no one would state, for example, that a baseball player who hits successfully in only 21 out of 95 at-bats (producing a

---

[3] PETA's arguments that other circuits have stated that longer time periods are necessary for an action not to evade review are irrelevant. The D.C. Circuit, which provides authoritative precedent for this Court, has repeatedly stated that anything less than two years evades review. *See e.g. Burlington*, 75 F.3d at 690; *Pub. Utils. Comm'n*, 236 F.3d at 708; *Del Monte Fresh Produce Co. v. U.S.*, 570 F.3d 316, 322 (D.C. Cir. 2009). The Circuit could very easily have set the relevant term at three years, or more; that they have repeatedly chosen not to suggests at least some recognition that actions with a duration of longer than two years do not evade review. Moreover, once mootness is found, the burden of showing an exception to mootness lies with the party opposing it, *see Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 576 (D.C. Cir. 2010), and simply pointing to another Circuit's precedent and stating that it differs from the D.C. Circuit does not suffice to meet that burden.

batting average of .221, which would be among the worst in the league) "typically" gets a hit. Thus, because this is not a typical duration for this action, it is not capable of repetition, yet evading review.

However, even if this action were by some miracle of language deemed "typical," this Court would still hesitate to apply this exception. "[A] plaintiff [must] make a full attempt to prevent his case from becoming moot, an obligation that includes filing for preliminary injunctions and appealing denials of preliminary injunctions." *Newdow v. Roberts*, 603 F.3d 1002, 1009 (D.C. Cir. 2010); *see also Minn. Humane Society v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999); *Armstrong v. FAA*, 515 F.3d 1294, 1297 (D.C. Cir. 2008) (holding same rule applies to stays). This consistency across circuits and across various tactics for preventing mootness suggests a clear policy emanating from federal circuit courts: a party contesting mootness must use every tool available to it to prevent the case from becoming moot, in order to insure that application of the capable of repetition, yet evading review exception truly is exceptional. Here, by contrast, PETA chose not to file for a preliminary injunction at all, based, it appears, on their feeling that they would lose any such attempt. *See* Opp. at 20-22. This clearly violates the command handed down in *Newdow* that plaintiffs make full attempts to make their cases from becoming moot, and thus even if the challenged action were typical the Court would have serious concerns with applying the capable of repetition, yet evading review exception.

### D. Pattern and Practice Claims

PETA's final argument to avoid mootness is that its claims for declaratory judgment relate to a pattern and practice of actions by FWS, and not to this action in particular. Their complaint certainly asserts this, stating that FWS has a "pattern and practice" of accepting what PETA terms "Pay-to-Play" proposals for permits and of "failing to provide ten days' notice of

8

permit issuance." Comp. at 19-20. But *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) makes clear that a properly-pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). While that is not quite the case here, PETA's bare assertions that FWS has a pattern and practice of failing to provide notice and of utilizing Pay-for-Play cannot suffice to meet any sort of pleading standard, backstopped as they are with only the assertions in the Declaration of Delcianna Winders in Support of Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Winders Decl.").

Arrayed against those bare assertions is a presumption which this Court must embrace. First, Courts in the D.C. Circuit have a "general presumption that a federal agency will follow its own regulations." *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011). Ms. Winders asserts in her declaration that FWS does not give the 10 days' notice normally required, but even a sworn declaration cannot defeat that presumption without something more. In a swearing contest like this one—FWS says it normally gives 10 days' notice, while PETA says FWS does not—the Court must err on the side of believing the word of the agency.

The Court is also hesitant to entertain PETA's challenge to the general "Pay-for-Play" policy because the claims are unripe. In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), the Supreme Court held that evaluating a particular challenge for ripeness entails a two-pronged test dealing with "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *See also City of Houston*, 24 F.3d at 322. "Under the 'fitness of the issues' prong, the first question for a reviewing court is 'whether the disputed claims raise

purely legal questions and would, therefore, be presumptively suitable for judicial review.'" *Id.* at 323, quoting *Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 92 (D.C. Cir. 1986). In *City of Houston*, the D.C. Circuit declined to find ripeness because "[the Circuit was] presented with a situation in which we require a concrete dispute in order to even know what [the defendant's] policy *is*." *Id.* at 323 (emphasis in original). The situation here is fundamentally similar. PETA asserts that FWS has in place a "Pay-to-Play" policy. *See generally* Comp. FWS, by contrast, denies it has any such policy, and points out that PETA can point "to no guidance document, memorandum, or other source reflecting that [FWS] has a policy of issuing … permits to applicants that commit to contribute funds to conservation organizations." Rep. at 11. Similar to *City of Houston*, then, the Court cannot even be sure what FWS's policy *is*, or whether any such policy *exists at all*. And at its core, this particular challenge is a challenge to an agency policy, which is better suited for an appeal to the Executive or to Congress.

Additionally, the "hardship" to PETA here is rather minimal. FWS's issuance of permits via a "Pay-to-Play" policy does not affect PETA concretely in any way—indeed, PETA's claims for standing in this case are based on informational standing (which deals exclusively with the lack of notice, and not the issuance of the permits themselves) and organizational injury. *See* Opp. at 26-36. The organizational injury is based on PETA having to spend money to fight this kind of permit. *Id.* at 30-36. But the Court seriously doubts that PETA would be fine with Hawthorn using endangered tigers in circuses, as long as Hawthorn did not use "Pay-for-Play" to get the permits—that seems entirely contrary to PETA's mission. In sum, the hardship to PETA be denying review of the alleged "Pay-for-Play" program would amount to nothing—PETA would still spend money to contest the issuance of permits at all. A hardship that minimal cannot overcome this challenge's lack of suitability for judicial review.

10

## IV. CONCLUSION

Any claims relating to the individual agency action here are obviously moot, and the action does not appear typical in a way that would invoke the capable of repetition, yet evading review exception. If FWS's actions really were as typical as PETA seems to think, then FWS will inevitably provide PETA another opportunity to seek review of a fundamentally similar action.

Similarly, the Court cannot infer a pattern and practice of breaking the law or issuing permits impermissibly based on such scanty evidence. But, if FWS really does have a pattern and practice of doing what PETA accuses it of doing, then another case will inevitably arise where FWS fails to provide the required notice, or utilizes the "Pay-for-Play" scheme complained of here. And if that were to occur, PETA could make sure that it does enough to defeat mootness, with the assurance that repeated individual actions by FWS of this nature would inevitably become typical enough to satisfy the capable of repetition, yet evading review standard.

PETA may have legitimate complaints about the lack of notice, but this case—where the underlying agency action is moot and there are only bare allegations of pattern and practice—is not the proper venue for them. Therefore, the Court will GRANT plaintiffs' motion to dismiss. A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge.